UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

ALICIA SANTOS SANTONIL,

            Plaintiff,

vs.                                                              Case No. 3:17-cv-758-J-JRK

NANCY A. BERRYHILL,
Deputy Commissioner for Operations
of the Social Security Administration,
performing the duties and functions not
reserved to the Commissioner of
Social Security,

            Defendant.
_____/

## OPINION AND ORDER[1]

### I. Status

Alicia Santos Santonil ("Plaintiff") is appealing the Commissioner of the Social Security Administration's ("SSA('s)") final decision denying her claim for disability insurance benefits ("DIB"). Plaintiff's alleged inability to work is a result of back pain, arm pain, neck pain, Diabetes Type II, and headaches. Transcript of Administrative Proceedings (Doc. No. 10; "Tr." or "administrative transcript"), filed September 6, 2017, at 133, 142. Plaintiff filed an application for DIB on August 29, 2012, alleging an onset disability date of October 7, 2011. Tr. at 288. Plaintiff's application was denied initially, see Tr. at 141, 133-140, and was denied upon reconsideration, see Tr. at 152, 142-151.

---

[1] The parties consented to the exercise of jurisdiction by a United States Magistrate Judge. See Notice, Consent, and Reference of a Civil Action to a Magistrate Judge (Doc. No. 11), filed September 6, 2017; Reference Order (Doc. No. 13), entered September 7, 2017.

On September 11, 2014, an Administrative Law Judge ("ALJ") held a hearing, during which he heard from Plaintiff, who was represented by counsel, and a vocational expert ("VE"). Tr. at 105-132. The ALJ issued a decision on January 14, 2015, finding Plaintiff not disabled through the date of the decision. Tr. at 156-163. On February 10, 2017, the Appeals Council granted Plaintiff's request for review, Tr. at 168-170, vacated the decision, and remanded the case to the ALJ "for resolution of the following issues: the [decision] does not contain an adequate evaluation of the non-examining source opinion [of Charles E. Moore, M.D.] . . . . The decision assigns Dr. Moore's opinion significant weight but does not provide adequate rationale for rejecting the manipulative limitations. Further, consideration of the opinion is necessary pursuant to 20 [C.F.R. §] 404.1527(e)," Tr. at 169 (citations omitted).

On October 3, 2016, the same ALJ held a second hearing, during which he heard from Plaintiff, who was again represented by counsel, and a VE. Tr. at 72-102. The ALJ issued a Decision on November 18, 2016, finding Plaintiff not disabled through the date of the Decision. Tr. at 57-64. On May 18, 2017, the Appeals Council denied Plaintiff's request for review, Tr. at 1-4, thereby making the ALJ's Decision the final decision of the Commissioner. On June 30, 2017, Plaintiff commenced this action under 42 U.S.C. § 405(g) by timely filing a Complaint (Doc. No. 1), seeking judicial review of the Commissioner's final decision.

On appeal, Plaintiff argues that the ALJ erred in the following ways: (1) "by not assigning weight to the opinions of . . . treating physician[s] [Paulo Monteiro, M.D., and Herman Downey, M.D.,]" and (2) "[by] not considering the effects of [Plaintiff's] pain." Memorandum in Support of Complaint (Doc. No. 15; "Pl.'s Mem."), filed September 15, 2017, at 6 (capitalization and emphasis omitted). On February 1, 2018, Defendant filed a

Memorandum in Support of the Commissioner's Decision (Doc. No. 18; "Def.'s Mem.") addressing Plaintiff's arguments. After a thorough review of the entire record and consideration of the parties' respective memoranda, the undersigned determines that the Commissioner's final decision is due to be affirmed.

## II. The ALJ's Decision

When determining whether an individual is disabled,[2] an ALJ must follow the five-step sequential inquiry set forth in the Code of Federal Regulations ("Regulations"), determining as appropriate whether the claimant (1) is currently employed or engaging in substantial gainful activity; (2) has a severe impairment; (3) has an impairment or combination of impairments that meets or medically equals one listed in the Regulations; (4) can perform past relevant work; and (5) retains the ability to perform any work in the national economy. 20 C.F.R. §§ 404.1520, 416.920; see also Phillips v. Barnhart, 357 F.3d 1232, 1237 (11th Cir. 2004). The claimant bears the burden of persuasion through step four and, at step five, the burden shifts to the Commissioner. Bowen v. Yuckert, 482 U.S. 137, 146 n.5 (1987).

Here, the ALJ followed the five-step sequential inquiry. See Tr. at 59-64. At step one, the ALJ determined that Plaintiff "engaged in substantial gainful activity through the second quarter of 2012[, but that] there has been a continuous 12-month [period] during which [Plaintiff] did not engage in substantial gainful activity." Tr. at 59 (emphasis and citations

---

[2] "Disability" is defined in the Social Security Act as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).

omitted). Thus, the remaining steps "address[ed] the period(s) [Plaintiff] did not engage in substantial gainful activity." Tr. at 59 (emphasis omitted).

At step two, the ALJ found that Plaintiff "has the following severe impairments: diabetes mellitus; diverticulitis; obesity; and degenerative dis[c] disease of the cervical spine, status post [anterior cervical discectomy and fusion (ACDF) surgery]." Tr. at 59 (emphasis and citation omitted). At step three, the ALJ ascertained that Plaintiff "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 [C.F.R.] Part 404, Subpart P, Appendix 1." Tr. at 60 (emphasis and citations omitted).

The ALJ determined that Plaintiff has the following residual functional capacity ("RFC"):

[Plaintiff can] perform light work as defined in 20 [C.F.R. §] 404.1567(b) and can occasionally climb ramps and stairs but never ladders, ropes, or scaffolds. [Plaintiff] can balance, stoop, kneel, crouch, and crawl all on an occasional basis. [Plaintiff] is limited to occasional bilateral overhead reaching, frequent bilateral handling, and frequent bilateral fingering. She cannot tolerate concentrated exposure to vibrations.

Tr. at 60 (emphasis omitted).

At step four, the ALJ relied on the testimony of the VE and found that Plaintiff is "capable of performing past relevant work as a billing clerk as generally performed per the Dictionary of Occupational Titles." Tr. at 62 (emphasis and citation omitted). The ALJ then proceeded to make alternative findings regarding the fifth and final step of the sequential inquiry. See Tr. at 63. At step five, after considering Plaintiff's age ("57 years old . . . on the alleged disability onset date"), education ("at least a high school education"), work experience, and RFC, the ALJ stated that Plaintiff has "acquired work skills from past relevant work that are transferable to other occupations with jobs existing in significant

numbers in the national economy." Tr. at 63. Relying on the testimony of the VE, the ALJ found that "[Plaintiff] could perform the job of a billing clerk." Tr. at 63 (citation omitted). The ALJ concluded that Plaintiff "has not been under a disability . . . from October 7, 2011, through the date of th[e D]decision." Tr. at 64 (emphasis and citation omitted).

### III. Standard of Review

This Court reviews the Commissioner's final decision as to disability pursuant to 42 U.S.C. §§ 405(g). Although no deference is given to the ALJ's conclusions of law, findings of fact "are conclusive if . . . supported by 'substantial evidence' . . . ." Doughty v. Apfel, 245 F.3d 1274, 1278 (11th Cir. 2001) (citing Falge v. Apfel, 150 F.3d 1320, 1322 (11th Cir. 1998)). "Substantial evidence is something 'more than a mere scintilla, but less than a preponderance.'" Dyer v. Barnhart, 395 F.3d 1206, 1210 (11th Cir. 2005) (quoting Hale v. Bowen, 831 F.2d 1007, 1011 (11th Cir. 1987)). The substantial evidence standard is met when there is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Falge, 150 F.3d at 1322 (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)). It is not for this Court to reweigh the evidence; rather, the entire record is reviewed to determine whether "the decision reached is reasonable and supported by substantial evidence." Cornelius v. Sullivan, 936 F.2d 1143, 1145 (11th Cir. 1991) (internal quotation and citations omitted); see also McRoberts v. Bowen, 841 F.2d 1077, 1080 (11th Cir. 1988); Walker v. Bowen, 826 F.2d 996, 999 (11th Cir. 1987). The decision reached by the Commissioner must be affirmed if it is supported by substantial evidence–even if the evidence preponderates against the Commissioner's findings. Crawford v. Comm'r of Soc. Sec., 363 F.3d 1155, 1158-59 (11th Cir. 2004) (per curiam).

## IV. Discussion

As noted, Plaintiff takes issue with the ALJ's failure to give weight to the opinions of Dr. Monteiro and Dr. Downey, as well as his alleged failure to take into account the effects of Plaintiff's pain. The relevant medical evidence is outlined below, followed by an analysis of Plaintiff's arguments.

### A. Summary of Relevant Medical Evidence

The administrative transcript indicates that Plaintiff first saw Dr. Monteiro on October 4, 2011. Tr. at 524-25; see Tr. at 518-29. On this date, Dr. Monteiro "advised [Plaintiff] to proceed with surgery" for a "[l]eft C6-7 dis[c] herniation." Tr. at 525. On October 7, 2011, Plaintiff underwent "Left C6-7 ACDF with Vectra," performed by Dr. Monteiro. Tr. at 523. Plaintiff then returned for three post-operative follow-up visits: one on October 18, 2011, Tr. at 521 (prescribing pain medication and advising Plaintiff to "continue alternating between cold therapy and moist heat to her shoulder area 2-3 times daily or as needed"), one on November 8, 2011, Tr. at 520 (noting that despite complaints of neck and shoulder pain, Plaintiff expressed "being very happy so far with the outcome of her surgery[;]" also noting a showing of "satisfactory alignment and positioning of the screws and hardware with no indication of loosening"), and one on December 13, 2011, Tr. at 519 (stating that Plaintiff "is doing quite well . . . [,] has no more pain in the arm . . ." [and] "takes occasional medication for pain but for the most part . . . is doing great"). Plaintiff also returned to work on a part-time basis for a couple of months after the surgery. Tr. at 73-75.

The administrative transcript further indicates that Dr. Downey was Plaintiff's primary care physician and that he saw Plaintiff regularly from as early as November 15, 2010 to as late as September 14, 2016. See Tr. at 565-603, 643-81, 687-92, 696-709, 712-48.

Throughout this period, Plaintiff saw Dr. Downey for evaluation and management of her conditions, primarily diabetes, hypertension, hypertriglyceridemia, and hypercholesterolemia, for which Dr. Downey prescribed medication, exercise plans, and diet recommendations. See Tr. at 657-73, 678-681, 687-692, 696-748. Nevertheless, he noted that Plaintiff continued to be overweight and that she was failing to "follow a regular diet or exercise program." Tr. at 687, 712, 717. Dr. Downey repeatedly reminded Plaintiff of the importance of compliance with medications and the complications of poorly controlled blood sugar. See Tr. at 691, 700, 705, 722, 748.

**B. Evaluation of the Medical Evidence**

**1. Parties' Arguments**

Plaintiff states that "[t]he ALJ is . . . obligated with the responsibility of assigning weight to the medical evidence so that a reviewing court can determine if all opinions have been considered." Pl.'s Mem. at 6. Plaintiff takes issue with the ALJ's evaluation of two treating physicians, Dr. Monteiro and Dr. Downey. See id. at 8-9. Plaintiff explains that "the ALJ does discuss [Dr. Monteiro's] treatment notes but fails to disclose the weight he assigned to the notes or opinions that are contained in the notes." Id. at 8. Plaintiff further explains that "[t]he ALJ also discusses the treatment records from Dr. Downey but again fails to assign weight to the opinions of . . . Dr. Downey." Id. Therefore, Plaintiff argues, due to the ALJ's failure to give weight to these two opinions, the ALJ erred in his Decision. See id. at 6, 8-9.

Responding, Defendant states that "the ALJ is required to articulate the weight he affords the medical opinions of record, but [that] there is no such requirement for treatment notes." Def.'s Mem. at 10. As to Dr. Downey, Defendant points out that "Plaintiff

-7-

acknowledges that Dr. Downey did not provide a medical opinion." Id. at 11 (citation omitted). As to Dr. Monteiro, Defendant states that his impression "does not contain a statement about what Plaintiff could still do despite her impairments or about her functional limitations," and suggests that his impression is therefore not a medical opinion that the ALJ must give weight to. Id. (citation omitted). As a result, Defendant argues, the ALJ did not fail to give weight to any medical opinion in the record and thus did not err in his Decision. See id.

**2. Applicable Law[3]**

The Regulations establish a "hierarchy" among medical opinions[4] that provides a framework for determining the weight afforded each medical opinion: "[g]enerally, the opinions of examining physicians are given more weight than those of non-examining physicians[;] treating physicians[' opinions] are given more weight than [non-treating physicians;] and the opinions of specialists are given more weight on issues within the area of expertise than those of non-specialists." McNamee v. Soc. Sec. Admin., 164 F. App'x 919, 923 (11th Cir. 2006) (citing 20 C.F.R. § 404.1527(d)(1), (2), (5)). The following factors are relevant in determining the weight to be given to a physician's opinion: (1) the "[l]ength of the treatment relationship and the frequency of examination"; (2) the "[n]ature and extent of [any] treatment relationship"; (3) "[s]upportability"; (4) "[c]onsistency" with other medical evidence

---

[3] On January 18, 2017, the SSA revised the rules regarding the evaluation of medical evidence for claims filed on or after March 27, 2017. See Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5844-01, 5844 (January 18, 2017). Because Plaintiff filed her claims before that date, the undersigned cites the rules and Regulations that were in effect on the date of the ALJ's Decision, unless otherwise noted.

[4] "Medical opinions are statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of [a claimant's] impairment(s), including [the claimant's] symptoms, diagnosis and prognosis, what [the claimant] can still do despite impairment(s), and [the claimant's] physical or mental restrictions." 20 C.F.R. § 404.1527(a)(2); see also 20 C.F.R. § 404.1513(a) (defining "[a]cceptable medical sources").

in the record; and (5) "[s]pecialization." 20 C.F.R. §§ 404.1527(d)(2)-(5), 416.927(d)(2)-(5); see also 20 C.F.R. §§ 404.1527(e), 416.927(f).

With regard to a treating physician or psychiatrist,[5] the Regulations instruct ALJs how to properly weigh such a medical opinion. See 20 C.F.R. § 404.1527(c). Because treating physicians "are likely to be the medical professionals most able to provide a detailed, longitudinal picture of [a claimant's] medical impairment(s)," a treating physician's or psychiatrist's medical opinion is to be afforded controlling weight if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence" in the record. Id. When a treating physician's or psychiatrist's medical opinion is not due controlling weight, the ALJ must determine the appropriate weight it should be given by considering the factors identified above (the length of treatment, the frequency of examination, the nature and extent of the treatment relationship, as well as the supportability of the opinion, its consistency with the other evidence, and the specialization of the physician). Id.

If an ALJ concludes the medical opinion of a treating physician or psychiatrist should be given less than substantial or considerable weight, he or she must clearly articulate reasons showing "good cause" for discounting it. Hargress v. Soc. Sec. Admin., Comm'r, 883 F.3d 1302, 1305 (11th Cir. 2018) (citation omitted); Lewis v. Callahan, 125 F.3d 1436, 1440 (11th Cir. 1997). Good cause exists when (1) the opinion is not bolstered by the evidence; (2) the evidence supports a contrary finding; or (3) the opinion is conclusory or inconsistent

---

[5] A treating physician or psychiatrist is a physician or psychiatrist who provides medical treatment or evaluation to the claimant and who has, or has had, an ongoing treatment relationship with the claimant, as established by medical evidence showing that the claimant sees or has seen the physician with a frequency consistent with accepted medical practice for the type of treatment and/or evaluation required for the medical condition. See 20 C.F.R. § 404.1502.

with the treating physician's or psychiatrist's own medical records. Hargress, 883 F.3d at 1305 (citation omitted); Phillips, 357 F.3d at 1240-41; see also Edwards v. Sullivan, 937 F.2d 580, 583-84 (11th Cir. 1991); Schnorr v. Bowen, 816 F.2d 578, 582 (11th Cir. 1987) (stating that a treating physician's medical opinion may be discounted when it is not accompanied by objective medical evidence).

An examining physician's opinion, on the other hand, is not entitled to deference. See McSwain v. Bowen, 814 F.2d 617, 619 (11th Cir. 1987) (per curiam) (citing Gibson v. Heckler, 779 F.2d 619, 623 (11th Cir. 1986)); see also Crawford, 363 F.3d at 1160 (citation omitted). Moreover, the opinions of non-examining physicians, taken alone, do not constitute substantial evidence. Broughton v. Heckler, 776 F.2d 960, 962 (11th Cir. 1985) (citing Spencer v. Heckler, 765 F.2d 1090, 1094 (11th Cir. 1985)). However, an ALJ may rely on a non-examining physician's opinion that is consistent with the evidence, while at the same time rejecting the opinion of "any physician" whose opinion is inconsistent with the evidence. Oldham v. Schweiker, 660 F.2d 1078, 1084 (5th Cir. Unit B. 1981) (citation omitted).

An ALJ is required to consider every medical opinion. See 20 C.F.R. §§ 404.1527(d), 416.927(d) (stating that "[r]egardless of its source, we will evaluate every medical opinion we receive"). While "the ALJ is free to reject the opinion of any physician when the evidence supports a contrary conclusion," Oldham, 660 F.2d at 1084 (citation omitted); see also 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2), "the ALJ must state with particularity the weight given to different medical opinions and the reasons therefor," Winschel v. Comm'r of Soc. Sec., 631 F.3d 1176, 1179 (11th Cir. 2011) (citing Sharfarz v. Bowen, 825 F.2d 278, 279 (11th Cir.1987)); see also Moore v. Barnhart, 405 F.3d 1208, 1212 (11th Cir. 2005); Lewis, 125 F.3d at 1440. "In the absence of such a statement, it is impossible for a reviewing court

to determine whether the ultimate decision on the merits of the claim is rational and supported by substantial evidence." Winschel, 631 F.3d at 1179 (quoting Cowart v. Schweiker, 662 F.2d 731, 735 (11th Cir. 1981)).

### 3. ALJ's Evaluation of the Medical Evidence

As noted, Defendant argues that the ALJ was not required to give weight to Dr. Monteiro's and Dr. Downey's treatment notes because they do not constitute "medical opinions." Def.'s Mem. at 11. The undersigned does not agree and finds that both Dr. Monteiro's and Dr. Downey's treatment notes constitute "medical opinions." See Winschel, 631 F.3d at 1179 (the treating physician's treatment notes constituted "medical opinions" because "[they] included a description of [Plaintiff]'s symptoms, a diagnosis, and a judgment about the severity of his impairments, and clearly constituted a 'statement[ ] from [a] physician . . . that reflect[s] judgments about the nature and severity of [Plaintiff's] impairment(s)' . . . ."); Lara v. Comm'r of Soc. Sec., 705 F. App'x 804, 811 (11th Cir. 2017) ("A medical provider's treatment notes may constitute medical opinions if the content reflects judgments about the nature and severity of [Plaintiff's] impairments.").

As to Dr. Monteiro's treatment notes, Defendant's argues that "Plaintiff[, in his brief,] acknowledges that Dr. Downey did not provide a medical opinion." Id. This, however, is not an accurate accounting of Plaintiff's position. Plaintiff stated that Dr. Downey "never rendered any specific opinions *regarding [Plaintiff's] physical limitations* . . . ." Pl.'s Mem. at 9 (emphasis added). Dr. Downey's treatment notes do in fact reflect judgments about the nature and severity of Plaintiff's impairments and limitations, and also provided a diagnosis of her symptoms. See Tr. at 646 (diagnosing Plaintiff with arthralgias, cervical radiculopathy, and back pain; prescribing 100mg of gabapentin 3 times a day and 4mg of Zanaflex twice a day

for her back pain and providing 12.5mg samples of Savella and up to 25mg of titrate for her arthralgias); Tr. at 565 (referring Plaintiff to neurosurgery for her cervical radiculopathy and her recurring symptoms); Tr. at 660 (reporting loss of function with cervical radiculopathy in the left upper extremity as well as in relation to her insulin-dependent diabetes mellitus and arthralgias consistent with fibromyalgia).

Similarly, Dr. Monteiro's treatment notes also reflect his judgments about the nature and severity of Plaintiff's impairments and limitations. See Tr. at 524 (noting a "spontaneous onset of neck, right shoulder and arm pain which has been present and unresolved for more than one month"); Tr. at 525 (advising Plaintiff to proceed with surgery); Tr. at 520 (commenting that "[Plaintiff] continues to express being very happy so far with the outcome of the surgery); Tr. at 519 (stating that "[Plaintiff] [was] doing quite well;" that "she has no more pain in the arm any longer;" that "[s]he takes occasional medication for pain but for the most part she is doing great").

Nevertheless, although both Dr. Downey's and Dr. Monteiro's treatment notes constitute "medical opinions," Plaintiff does not explain how the ALJ's findings are affected by the ALJ's failure to specifically assign a weight to these opinions. This lack of explanation might be partly because Dr. Downey's and Dr. Monteiro's opinions actually support the ALJ's holding: that Plaintiff is not disabled because "[t]he medical evidence does not support the severity of the [Plaintiff's] symptoms or limitations as alleged[,]" in part because the "treatment has been essentially routine and conservative in nature[, t]he medical evidence . . . reflects minimal objective findings of disabling limitations," and "[Plaintiff's] symptoms significantly improved" when she remained on her medication. Tr. at 62; see Tr. at 555 (Dr. Monteiro noting that a physical examination of Plaintiff revealed tenderness on left shoulder with some

difficulty in lateral rotation, but that her neck had a full range of motion and her motor strength and deep tendon reflexes were normal); Tr. at 646-47 (Dr. Downey noting that Plaintiff's diabetes was uncomplicated despite being uncontrolled; further stating that Plaintiff did not want to see pain management); see also Tr. at 73-75 (Plaintiff returned to work on a part-time basis for a couple of months after surgery). Furthermore, it is clear from the Decision that the ALJ thoroughly considered the treatment notes. See Tr. at 61. Thus, any error in the ALJ's failure to specifically assign weight to Dr. Downey's and Dr. Monteiro's opinions is harmless. See e.g., Wright v. Barnhart, 152 F. App'x 678, 684 (11th Cir. 2005) (unpublished) (finding that "[a]lthough the ALJ did not explicitly state what weight he afforded the opinions of [four physicians], none of their opinions directly contradicted the ALJ's findings, and, therefore, any error regarding their opinions is harmless").

For these reasons, the ALJ did not reversibly err by failing to assign weight to Dr. Downey's and Dr. Monteiro's medical opinions.

## C. Consideration of the Effects of Plaintiff's Pain

### 1. Parties' Arguments

Plaintiff states that "[t]he ALJ is tasked with the job of discussing pain and its effects on [Plaintiff]." Pl.'s Mem. at 6. Plaintiff further states that because "pain by itself can give rise to a disability . . . the failure to consider the effects of pain is reversible error." Id. Plaintiff argues that "[i]n the [D]ecision, there is no discussion about the effects of pain although [Plaintiff] suffers from cervical radiculopathy post cervical fusion and diabetes, which is uncontrolled," and that "[b]oth of these conditions are capable of producing pain and some indication of its effects should be reflected in the hypothetical to the VE." Id. Plaintiff further explains that "[i]n the hypothetical that was presented to the VE[,] there is no mention of the

effects of pain [and that t]he hypothetical concerned itself only with the physical limitations but does not discuss the effects of pain . . . ." Id. at 7. Thus, Plaintiff argues, because the ALJ did not consider the effects of Plaintiff's pain, the ALJ erred in his Decision. See id. at 6-7.

Responding, Defendant states that an ALJ may discredit Plaintiff's "testimony concerning pain" so long as the discrediting is supported by substantial evidence. See Def.'s Mem. at 5. Defendant explains that "[t]he ALJ determined that Plaintiff's medically determinable impairments could reasonably be excepted to cause her alleged symptoms but that Plaintiff's statements concerning the intensity, persistence, and limiting effects of her symptoms were not entirely [consistent with the medical evidence]." Id. (citation omitted). Defendant further explains that "[t]he ALJ articulated specific reasons for [his] finding, including that: (1) Plaintiff was able to work - and engaged in SGA - after she alleges she became disabled; (2) medical evidence does not support her allegations of disabling symptoms; (3) her treatment was generally routine and conservative in nature; (4) her symptoms improved with treatment; and (5) Plaintiff was not always compliant with her prescribed treatment." Id. (citation omitted). Therefore, Defendant concludes, because "substantial evidence supports the ALJ's findings," the ALJ did not err in his Decision. Id.

**2. Applicable Law**

"[T]o establish a disability based on testimony of pain and other symptoms, the claimant must satisfy two parts of a three-part showing: (1) evidence of an underlying medical condition; and (2) either (a) objective medical evidence confirming the severity of the alleged pain; or (b) that the objectively determined medical condition can reasonably be expected to give rise to the claimed pain." Wilson v. Barnhart, 284 F.3d 1219, 1225 (11th Cir. 2002) (citing Holt v. Sullivan, 921 F.2d 1221, 1223 (11th Cir. 1991)). "The claimant's subjective testimony

supported by medical evidence that satisfies the standard is itself sufficient to support a finding of disability." Holt, 921 F.3d at 1223.

"When evaluating a claimant's subjective symptoms, the ALJ must consider such things as: (1) the claimant's daily activities; (2) the nature, location, onset, duration, frequency, radiation, and intensity of pain and other symptoms; (3) precipitating and aggravating factors; (4) adverse side-effects of medications; and (5) treatment or measures taken by the claimant for relief of symptoms." Davis v. Astrue, 287 F. App'x 748, 760 (11th Cir. 2008) (unpublished) (citing 20 C.F.R. § 404.1529(c)(3)(i)-(vi)). To reject a claimant's assertions of subjective symptoms, "explicit and adequate reasons" must be articulated by the ALJ. Wilson, 284 F.3d at 1225; see also Dyer, 395 F.3d at 1210; Marbury v. Sullivan, 957 F.2d 837, 839 (11th Cir. 1992).

The SSA recently issued new guidance to ALJs about how to evaluate subjective complaints of pain and other symptoms. The SSA has "eliminat[ed] the use of the term 'credibility' from [its] sub-regulatory policy, as [the R]egulations do not use this term." Social Security Ruling ("SSR") 16-3P, 2017 WL 5180304, at *2 (Oct. 25, 2017).[6] "In doing so, [the SSA has] clarif[ied] that subjective symptom evaluation is not an examination of an individual's character." Id. Accordingly, ALJs are "instruct[ed] . . . to consider all of the evidence in an individual's record when they evaluate the intensity and persistence of symptoms after they find that the individual has a medically determinable impairment(s) that could reasonably be expected to produce those symptoms." Id. "The change in wording is meant to clarify that [ALJs] aren't in the business of impeaching claimants' character;

---

[6] There was a prior version of SSR 16-3P in place at the time of the ALJ's Decision. See SSR 16-3P, 2016 WL 1119029 (Mar. 16, 2016). The same relevant language quoted in this Report and Recommendation appears in this prior version. See id. at *1.

-15-

obviously [ALJs] will continue to assess the credibility of pain <u>assertions</u> by applicants, especially as such assertions often cannot be either credited or rejected on the basis of medical evidence." <u>Cole v. Colvin</u>, 831 F.3d 411, 412 (7th Cir. 2016) (emphasis in original).

### 3. ALJ's Evaluation of Subjective Complaints

The ALJ summarized the mental health evidence of the record, Tr. at 60-61, and concluded that "[a]lthough [Plaintiff] has limitations, they do not preclude her from performing work activity . . . [,]" Tr. at 62. Specifically, the ALJ found that Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, [Plaintiff's] statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record . . ." Tr. at 62.

In reaching his conclusion, the ALJ relied in part on the fact that "[Plaintiff] was able to work at SGA level after the date she claims she was disabled and unable to work." Tr. at 62; <u>see</u> Tr. at 73-75 (Plaintiff returned to work on a part-time basis for a couple of months after surgery). The ALJ also relied on the fact that "treatment has been essentially routine and conservative in nature" and that "when [Plaintiff] is maintained on her medications, her symptoms significantly improved." Tr. at 62; <u>see</u> Tr. at 691, 700, 705, 722, 748 (repeatedly reminding Plaintiff of the importance of compliance with medications and the complications of poorly controlled blood sugar). The ALJ further took into account Plaintiff's noncompliance with her medication regimen and her refusal of pain management. Tr. at 62; <u>see</u> Tr. at 687, 712, 717 (noting that Plaintiff continued to be overweight and that she was failing to "follow a regular diet or exercise program"); Tr. at 646-47 ("[Plaintiff] does not want to see pain management at this time."). Finally, the ALJ stated that "[t]he medical evidence of record

reflects minimal objective findings of disabling limitations." Tr. at 62; see Tr. at 519 (post-operative follow-up visit stating that Plaintiff "is doing quite well . . . [,] has no more pain in the arm . . ." [and] "takes occasional medication for pain but for the most part . . . is doing great").

Therefore, the ALJ's holding that Plaintiff's subjective complaints were not entirely consistent with the medical evidence is supported by substantial evidence.

### V. Conclusion

After a thorough review of the entire record, the Court finds that the ALJ's Decision is supported by substantial evidence. Accordingly, it is

**ORDERED**:

1. The Clerk of Court is directed to enter judgment pursuant to sentence four of 42 U.S.C. § 405(g) **AFFIRMING** the Commissioner's final decision.

2. The Clerk is further directed to close the file.

**DONE AND ORDERED** at Jacksonville, Florida on July 23, 2018.

_James R. Klindt_
JAMES R. KLINDT
United States Magistrate Judge

jec

Copies to:

Counsel of record